| | |
|---|---|
| **SOUTHERN HVAC CORPORATION** and **FAST OF FLORIDA, INC., as successor-by-merger to U.S. H&AC, LLC** ) ) ) ) | |
| Plaintiffs, ) | |
| ) | Case No. 6:18-cv-1589-RBD-TBS |
| vs. ) | |
| ) | **JURY TRIAL DEMANDED** |
| **ARIE KONFORTE, JUSTIN KONFORTE, PHILIPA MACHIAL,** and **JOSKO, LLC** ) ) ) ) | |
| Defendants. ) | |

## AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, Southern HVAC Corporation and Fast of Florida, Inc., as successor-by-merger to U.S. H&AC, LLC ("USHAC"), file this amended complaint for injunctive relief, monetary damages, and other relief against Defendants Arie Konforte, Justin Konforte, Philipa Machial, and Josko LLC. Plaintiffs state as follows:

## INTRODUCTION

1.     On February 1, 2017, Arie Konforte sold his heating, ventilation, and air conditioning ("HVAC") installation, maintenance and repair, electrical service, and plumbing service business to USHAC for $10 Million. At the time, he agreed with USHAC and its direct parent company Southern HVAC that he would not,

directly or indirectly, compete with Southern HVAC or USHAC, solicit their customers, or solicit their employees for a period of five (5) years, and signed a Noncompetition, Nonsolicitation and Confidentiality Agreement to that effect.[1]

2.  Using the proceeds from the sale, Arie Konforte conspired with the other individual defendants to strip the USHAC business of its value. Arie Konforte, his son (defendant Justin Konforte), and his girlfriend (defendant Philipa Machial), formed Josko LLC in November 2017 to do just that.

3.  Defendants built Josko's business on a foundation of USHAC's confidential and proprietary information, employees, and customers, including while Justin Konforte and Philipa Machial remained USHAC employees. With each additional piece of confidential and proprietary information used, each employee poached, and each customer taken, the Defendants further erode USHAC's and Southern HVAC's business and investment.

4.  Defendants' brazen conduct has violated their contractual obligations to Southern HVAC and USHAC, breached duties of loyalty owed to USHAC, and tortiously interfered with USHAC's contractual and business relations.

5.  Defendants' actions have harmed and continue to harm USHAC in numerous ways. By way of example, Defendants' conduct has caused and continues

---

[1] A true and correct copy of the Noncompetition, Nonsolicitation, and Confidentiality Agreement is attached hereto as Exhibit A.

to cause USHAC to suffer lost revenue of approximately $3 Million per year. Those actions have also reduced the overall value of the USHAC business by approximately seventy-five percent (75%) since it was purchased from Arie Konforte. Defendants' actions have also caused other harm to Southern HVAC and USHAC, including to their goodwill and client and employee relationships.

6.      Because Defendants' wrongful conduct is ongoing, is causing substantial harm to Southern HVAC and USHAC, and continues despite Plaintiffs' good faith efforts to seek a resolution short of litigation, Plaintiffs have commenced this action. Southern HVAC and USHAC seek injunctive relief to prevent any further harm to Plaintiffs and to prevent Defendants from further violating Plaintiffs' statutory, contractual, and common law rights and also seek to recover the damages caused by Defendants' misconduct.

## JURISDICTION, VENUE, AND PARTIES

7.      This Court has jurisdiction over this case under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) because USHAC's claims arise under the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq., and are based on trade secrets related to products and/or services used in interstate and/or foreign commerce. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Southern HVAC and USHAC's state law claims, because those claims arise out of the same operative facts as those underlying the federal claims.

8.     Venue is proper in this Court under 28 U.S.C. § 1391 in that Defendants committed tortious acts or injuries in this judicial district, and/or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

9.     Southern HVAC Corporation is a Delaware corporation registered to do and does business in this state.  Southern HVAC Corporation is the parent company of Fast of Florida, Inc.

10.     Fast of Florida, Inc. is a Florida corporation doing business in this state. Fast of Florida, Inc. is the successor-by-merger to U.S. H&AC, LLC and does business under the USHAC name.

11.     Southern HVAC and USHAC are in the business of selling, installing, and servicing heating, ventilation, and air conditioning systems and providing plumbing, electrical, and additional home services to homeowners, multifamily properties and light commercial buildings.

12.     Defendant Arie Konforte is the former owner of USHAC's predecessor in interest, U.S. Heating & Air Conditioning, Inc., the assets of which were purchased by USHAC pursuant to an Asset Purchase Agreement dated February 1, 2017.  Arie Konforte is over the age of 18, is not in the United States military, and is a resident of the state of Florida.  Arie Konforte is subject to personal jurisdiction in this Court because he resides in Florida and operates, conducts and engages in

business in Florida and engaged in the conduct giving rise to this lawsuit in the state of Florida.

13.     Defendant Justin Konforte is a former employee of USHAC.  Justin Konforte is over the age of 18, is not in the United States military, and is a resident of the state of Florida.  Justin Konforte is subject to personal jurisdiction in this Court because he resides in Florida and operates, conducts and engages in business in Florida and engaged in the conduct giving rise to this lawsuit in the state of Florida.

14.     Defendant Philipa Machial is a former employee of USHAC.  Machial is over the age of 18, is not in the United States military, and is a resident of the state of Florida.  Machial is subject to personal jurisdiction in this Court because she resides in Florida and operates, conducts and engages in business in Florida and engaged in the conduct giving rise to this lawsuit in the state of Florida.

15.     Defendant Josko LLC is a Florida limited liability company, doing business in Florida.  It is also in the business of selling, installing, and servicing heating, ventilation, and air conditioning systems and providing plumbing, electrical, and additional home services to homeowners, multifamily properties and light commercial buildings.  On information and belief, Josko LLC's membership includes some combination of Arie Konforte, Justin Konforte and Philipa Machial. Josko LLC is subject to personal jurisdiction in this Court because it conducts

business in the state and engaged in the conduct giving rise to this lawsuit in the state of Florida and because its Member or Members are residents of the state of Florida.

16.     All conditions precedent to the filing of this action have been fulfilled, satisfied or otherwise excused.

17.     Plaintiffs have retained the undersigned counsel to represent them in this action, and are obligated to pay such counsel reasonable attorneys' fees.

## FACTUAL STATEMENTS

18.     The HVAC, plumbing, and electrical and other home service industry, like most contractor service industries, is extremely competitive.  Regional full-service providers like USHAC and Josko are often competing directly against one-another for the same customers and employees.  To maintain an edge in such a competitive industry, it is common for service providers take steps to protect their confidential and proprietary business information.  That information often includes customer relationships, pricing information and margins, vendor relationships, payment terms, business strategies, and employee relationships, each of which plays a key role in the business's ability to compete and in development and protection of its goodwill in the industry.

19.     The confidentiality of USHAC's customer and vendor lists and pricing information, in particular, are extremely important to USHAC's business in such a highly-competitive industry.  That information derives much of its economic value

by not being generally known or available to the public.  If that information were made available to one of USHAC's competitors, such as Josko, that competitor could approach USHAC's current and potential customers and undercut USHAC on any of its installation bids.

20.    One of the means utilized to protect Plaintiffs' confidential and proprietary information and goodwill in the industry is to enter into non-competition, non-solicitation, and confidentiality agreements with the sellers of any businesses purchased.

### I.    Southern HVAC and USHAC Acquire Arie Konforte's Business and Require Him to Sign Multiple Covenants Agreements.

21.    Arie Konforte formed USHAC's predecessor, U.S. Heating & Air Conditioning, Inc., in 1993 and ran the business for 24 years.  As a result, Arie Konforte had intimate knowledge of the business's customers, employees, suppliers, margins, business models, pricing information, and other confidential and proprietary information.

22.    Because of that knowledge and to protect against the harm Arie Konforte could do to the business it was buying, when USHAC purchased the assets of U.S. Heating & Air Conditioning, Inc. from Arie Konforte (the "Transaction"), one of the conditions to closing the Transaction was Arie Konforte's agreement to be bound by the terms of the Restrictive Covenants Agreement.  (Ex. A, at 1).

23. Under the terms of the Restrictive Covenants Agreement, Arie Konforte agreed that he would not directly or by assisting others:

> [E]ngage in, or assist others in engaging in, any business that is the same as, similar to or competitive with the Business [of providing heating and air conditioning installation, maintenance, repair and replacement services, including new installation services for homebuilders and retrofit and maintenance services, as well as electrical and plumbing services, in each case, for homeowners, property management & home warranty companies, multi-family housing and other residential businesses, as currently conducted by [US Heating & Air Conditioning, Inc.].]

(Ex. A, §§ 1, 4).

24. He further agreed that he would not have a financial or ownership interest in such a business, nor would he make a loan to, provide advice or assistance to, or permit his name to be used in connection with such a business. (Ex. A, § 4). Those restrictions apply for a five-year period beginning February 1, 2017 (the "Restricted Period"), and apply in any geographical area in which any "Group Company" (which includes both Southern HVAC and USHAC) or any of their subsidiaries conducts business during the Restricted Period. (Ex. A, § 4).

25. Arie Konforte further agreed not to, directly or by assisting others, (a) induce or attempt to induce employees or contractors to leave, or otherwise interfere with their relationship with, USHAC or Southern HVAC or their subsidiaries or affiliates, (b) hire or engage any employee or consultant of USHAC or Southern HVAC or their subsidiaries or affiliates as of the date of the Restrictive Covenants

Agreement or the prior year, (c) solicit, induce, or attempt to induce any existing or prospective customer, supplier, or other business relation to cease or refrain from doing business with USHAC or Southern HVAC or their subsidiaries or affiliates, or (d) enter into any business relationship with, or interfere with the relationships or prospective relationship with, any current or prospective customer, supplier, or other business relation of USHAC or Southern HVAC or their subsidiaries or affiliates. (Ex. A, §§ 1, 5).

26.     Finally, Arie Konforte agreed that he would maintain the confidentiality of confidential information in addition to other applicable trade secret protections that might be available for confidential and proprietary information.  (Ex. A, § 3).

27.     Arie Konforte acknowledged and agreed that, because of his knowledge of the trade secrets and confidential information of Southern HVAC and USHAC and their subsidiaries and affiliates, the protections in the Restrictive Covenants Agreement are reasonably necessary to protect USHAC's legitimate business interests and were an inducement to USHAC to enter into the Asset Purchase Agreement.  (Ex. A, § 2).  He also acknowledged that Southern HVAC and USHAC would, in addition to other remedies at law or in equity, be entitled to an injunction and specific performance to enforce the terms of the Restrictive Covenants Agreement.  (Ex. A, § 8).

28.     The obligations in the Restrictive Covenants Agreement inure to the benefit of USHAC's successor-by-merger, Fast of Florida, Inc. (Ex. A, § 9(e)).

29.     In connection with the Transaction, Arie Konforte also executed a Consulting Agreement with USHAC, the term of which ran for a year after the closing of the Transaction unless terminated earlier. Arie Konforte provided services to USHAC under the Consulting Agreement into November 2017, and the Consulting Agreement expired on February 1, 2018.[2]

30.     USHAC expected that Arie Konforte would assist with the transition of the business, specifically for customers, employees, and suppliers, from U.S. Heating & Air Conditioning, Inc. to USHAC and the Southern HVAC family of companies. In exchange, he would receive, and did receive, a monthly fee of $15,000 per full month of services provided. (Ex. B, § 2).

31.     Similar to the Restrictive Covenants Agreement, the Consulting Agreement included an acknowledgement that "as a founder and officer of [U.S. Heating & Air Conditioning, Inc.], [Arie Konforte] has a unique knowledge of [U.S. Heating & Air Conditioning, Inc.'s] business, its customers, and its trade secrets, and, as such, [Arie Konforte's] execution of this Agreement is a condition to the

---

[2] A true and correct copy of the Consulting Agreement dated January 31, 2017 (the "Consulting Agreement"), is attached hereto as Exhibit B.

Company's obligations under the Purchase Agreement and the closing of the Transaction."  (Ex. B, at 1).

32.     Because of Arie Konforte's knowledge of USHAC's business, customers, employees, suppliers, and other confidential and proprietary information, and his ongoing access to that information and new information provided by virtue of Southern HVAC's ownership of USHAC, including Southern HVAC's proprietary pricing information, the Consulting Agreement included a promise that he would not "(i) use any Confidential Information or (ii) disseminate or in any way disclose the Confidential Information to any person, firm, business or governmental agency or department."  (Ex. B, § 5(b)).

33.     "Confidential Information," as defined in the Consulting Agreement, includes:

> [A]ny technical and non-technical information related to [USHAC]'s business and current, future and proposed products and services of [USHAC], including for example and without limitation . . . [USHAC]'s information concerning research, development, design details and specifications, financial information, procurement requirements, engineering and manufacturing information, lists and information concerning customers, vendors, and suppliers, business forecasts, sales information, marketing plans and business plans, in each case whether or not marked as "confidential" or "proprietary"[.]

(Ex. B, § 5(a)).

34.     As an additional protection for the confidential and proprietary information, goodwill, and business of USHAC, Arie Konforte further agreed that during the term of the Consulting Agreement and for a year following its termination or expiration, he:

> [Would] not, (a) directly or by assisting others, engage in a Competing Business, (b) serve as executive, officer, director, manager, or consultant to any person or entity that engages in a Competing Business, or (c) directly or indirectly hold any equity or ownership interest in any entity, except for an ownership interest of less than one percent (1%) of the outstanding equity of any publicly-traded entity, that engages in a Competing Business.

(Ex. B, § 7).     Similar to the Restrictive Covenants Agreement, "Competing Business" is defined in the Consulting Agreement as "[t]he business of providing heating and air conditioning installation, maintenance, repair and replacement services, including new installation services for homebuilders and retrofit and maintenance services, as well as electrical and plumbing services, in each case, for homeowners, property management & home warranty companies, multi-family housing and other residential businesses, as currently conducted by [USHAC]." (Ex. B, § 7).

35.     In the Consulting Agreement, Arie Konforte also agreed that during the term of the Consulting Agreement and for a year following its termination or expiration he would not:

> [D]irectly or by assisting others, solicit, persuade, or otherwise encourage any customer, vendor, or supplier of or to [USHAC] with whom [he] had contact to stop or otherwise reduce or limit the business it does with [USHAC] for the purpose of offering or providing any services competitive with or directly substitutable for those provided by [USHAC].

(Ex. B, § 8).

36.     Arie Konforte further promised that, during the consulting term and for a year thereafter (and with certain limited exceptions not applicable here), he would not:

> [S]olicit, recruit, or induce any employee, consultant, or other independent contractor of [USHAC] to terminate or breach an employment, contractual, or other relationship with [USHAC.]

(Ex. B, § 9).

37.     Similar to the Restrictive Covenants Agreement, the Consulting Agreement included provisions stating that any breach by Arie Konforte would entitle USHAC to injunctive relief and specific performance, among other relief available, and that it would be for the benefit of USHAC's successors.  (Ex. B, §§ 14(a), (b)).

38.     By virtue of his position as a consultant to USHAC, Arie Konforte held a position of trust and confidence with regard to USHAC's confidential and proprietary information.

## II. Justin Konforte and Philipa Machial Remained Employees of USHAC and Owed it Common Law Duties of Loyalty.

39. Justin Konforte and Philipa Machial were both employed by U.S. Heating & Air Conditioning, Inc. and then immediately became employees of USHAC following the close of the Transaction in February 2017.

40. Justin Konforte was an employee in USHAC's air conditioning division and, during his employment, had access to confidential information about USHAC's business, its customers, its pricing and margins, and its employees.

41. Philipa Machial was a top Commercial Account Representative for USHAC and, during her employment, had access to confidential information about USHAC's business, its customers, its pricing and margins and its employees. Machial also regularly interacted directly with USHAC's customers and used her position and USHAC's goodwill with its customers to develop direct business relationships with those customers.

42. As employees of USHAC, Justin Konforte and Philipa Machial owed common law duties of loyalty to it, including that they would not engage in any competitive activity during their employment.

43. Justin Konforte and Philipa Machial also were subject to Southern HVAC and USHAC policies regarding confidentiality, trade secrets, and other

proprietary information included in the Southern HVAC Employee Guidebook, which applies to Southern HVAC and each of its subsidiaries, including USHAC.[3]

44.     The Code of Conduct included in the Guidebook makes clear that any customer list (written or unwritten) is "exclusive and confidential company property and may not be used to solicit business outside the scope of the company." (Ex. C, at 5).

45.     Southern HVAC's Electronic Systems Use policy prohibits transmission or receipt of material in violation of company policies, including confidential information, trade secrets, and proprietary financial information. (Ex. C, at 62). It goes on to state that: "[The] Confidentiality policy in this guidebook applies to information in all its forms, including business-related messages in these electronic systems. Such confidential information must not be forwarded by means of our electronic systems to any individuals outside the company under any circumstances. Also, when transmitting such information within the company, it must be sent only to those recipients who are authorized to receive it." (Ex. C, at 62).

46.     The Guidebook's Confidentiality policy states that employees:

> [M]ay not disclose, duplicate, or use confidential
> information, except as required in the performance of [the
> employee's] duties with Southern HVAC.

---

[3] True and correct copies of relevant excerpts from the Guidebook are attached as Exhibit C.

(Ex. C, at 73). "Confidential information" covered by the policy specifically includes, but is not limited to:

> [C]ompany records; trade secrets; business secrets; customer files and information (including personal information about customers); medical information; computer files; ***vendor or supplier information***; development plans; business information about products, concepts, processes, services, drawings, and know-how; ***customers lists (written or unwritten)***; secret inventions; discoveries; technological data; estimating procedures; proprietary software; results of research and development; marketing research; accounting records or reports; financial information about the owners; cost figures; ***customer fees, payments, and pricing information***; business plans and strategies; pending projects and proposals; and other types of related company information.

(Ex. C, at 72-73 (emphasis added)).

47.     Southern HVAC and USHAC take other reasonable steps to maintain the confidentiality of their confidential, proprietary, and trade secret information, including, without limitation, protection of the information by limited access, limited distribution, computer firewalls, password protection for cell phone and computer equipment, physical locks, and confidentiality and non-disclosure agreements.

48.     By virtue of their access to confidential information regarding USHAC's employees, customers, pricing and margins, and business, Justin Konforte and Philipa Machial held "a special position of trust and confidence toward th[at]

data." (Ex. C, at 73). As such, Justin Konforte and Philipa Machial were expected and agreed to act in USHAC's best interests.

### III. Defendants Use Their Positions and Knowledge of USHAC's Confidential and Proprietary Information to Establish Josko as a Direct Competitor.

49. Unbeknownst to Southern HVAC and USHAC, in or about November 2017, Arie Konforte, Justin Konforte, and Philipa Machial conspired with one another to form Josko with the intent to directly and unfairly compete with USHAC, significantly devaluing the business Arie Konforte had just sold in the process.

50. On information and belief, Justin Konforte formed Josko while still employed by USHAC to compete directly with his then current employer and did so with Arie Konforte's advice, financial backing, and other support.

51. Once Josko was formed, Philipa Machial used her access to USHAC's customers, confidential information, and employees to build up Josko's customer base, make sure its customer and supplier pricing put it in a position to compete unfairly with USHAC, and build its workforce, using Justin Konforte's knowledge of USHAC's personnel, with the most valuable members of USHAC's team.

*Defendants Misappropriate USHAC's Trade Secrets*

52. In coordination with and at the direction of the other Defendants, while still employed by USHAC, Machial repeatedly accessed and took confidential and proprietary information belonging to USHAC for use by Josko. By way of example:

17

- On October 18, 2017, Machial forwarded an e-mail from a roofing subcontractor with pricing proposals from her work e-mail account to her personal e-mail address, and then from her work e-mail account to Arie Konforte's personal e-mail address.

- On November 8, 2017, Machial e-mailed a list of key customers from her work e-mail account to her personal e-mail account, which included the names, quantity of work orders, and total revenue generated for customers. The spreadsheet lists over 3,000 USHAC customers that accounted for over 48,000 work orders and over $16 Million in total revenue.

- On or about February 23, 2018, Machial used her access to USHAC's computer systems and her USHAC e-mail account to access multiple documents that reflected key information and/or confidential and proprietary information of USHAC, including a price book that reflects all supplier information and pricing for USHAC's business.

- On March 29, 2018, Machial received an e-mail from a potential customer asking whether "[her] company" would still be able to perform a roof replacement for the customer. She replied the same day and told the potential customer: "Yes I will get in touch with Mike Hicks." Mike Hicks is not a USHAC employee and his company has no current affiliation with USHAC. On information and belief, Mike Hicks provides certified roofing and building contractor services to and on behalf of Josko.

53. Defendants actions, in coordination with and through Machial, were not limited to accessing and taking confidential and electronic proprietary information. For example:

- At the beginning of the month she resigned, Machial requested a copy of USHAC's confidential and proprietary price book from fellow USHAC employee Benjamin Jones. Machial did not provide a reason for needing the price book. Machial never returned a copy of the price book and, on information and belief, still has the price book and is using it on behalf of Josko to negotiate favorable pricing with USHAC's vendors and undercut USHAC's pricing with its customers.

- That same month, Machial spoke with a supervisor at Customer VP[4], purportedly on behalf of USHAC to discuss a potential project at Customer VP, and rather than engaging with that customer on USHAC's behalf, she actually told the customer to wait on the project, rather than proceeding then with USHAC, because she "ha[d] something else going on" and that the customer should not call any of her sales assistants at USHAC.

54.    On information and belief, Machial conspired with, and was encouraged by, Arie Konforte and Justin Konforte, both individually and on behalf of Josko, in undertaking her conduct described above.

55.    On information and belief, Machial disclosed to Arie Konforte, Justin Konforte, and Josko the confidential and proprietary customer and vendor information and other trade secrets in the documents taken, which was available to Machial only in her capacity as an employee of USHAC. Arie Konforte, Justin Konforte, and Josko, in turn, improperly used that information in Josko's business to subvert USHAC's relationships with its customers and employees.

56.    Machial used the information gained from USHAC other than for its intended, limited purpose. Machial, Arie Konforte, and Justin Konforte acted in bad faith, using that information to launch a company, Josko, that used USHAC's confidential and proprietary information to unfairly compete with and knowingly try to dismantle USHAC.

---

[4] Defendants are aware of the identity of Customer VP, which is one of Customers 1-28 (defined below) taken by Josko, and Plaintiffs can provide the identity of Customer VP to Defendants' counsel if requested, subject to an appropriate confidentiality order being entered.

57.     Justin Konforte, Arie Konforte, and Josko had knowledge of the confidential and proprietary nature of the information Machial took from USHAC.

58.     With Josko formed and ready to take advantage of the confidential and proprietary information being stolen from USHAC, and with Justin Konforte already listed as Josko's manager on public filings, Justin Konforte resigned from USHAC on February 26, 2018.

59.     After gathering additional confidential and proprietary information, significantly increasing the amount of time she was spending on-site at clients, and even encouraging employees working with her to look for other jobs, Philipa Machial followed suit and resigned on March 30, 2018.

*Defendants Poach USHAC's Employees and Customers*

60.     Josko, with and through the other Defendants, has also intentionally and unlawfully interfered with USHAC's relationships with its employees by conspiring to and successfully poaching a significant portion of USHAC's employees in an effort to render USHAC unable to run its business and service its customers in the ordinary course.

61.     Specifically, to date, Defendants have solicited and ultimately hired at least 25 employees from USHAC. The employees hired away from USHAC include each of the key employees that held licenses that allowed USHAC to run its business (i.e., mechanical contractor and certified plumbing contractor and their associated

licenses).  USHAC's business requires employees holding those licenses to operate and Defendants knew that and deliberately attempted to devalue USHAC by poaching these key employees.

62.     Arie Konforte was directly involved in those employee solicitation efforts, including personally meeting with and soliciting USHAC employees to come work for Josko and, in doing so, stating that he was actively engaged with and supporting Josko.

63.     It is clear from Defendants' actions that poaching key employees that USHAC needed to be able to run its business was one of the key objectives of their conspiracy *en route* to their final objective of putting USHAC out of business.

64.     In the year prior to Defendants starting Josko and recruiting away a significant portion of USHAC's workforce, USHAC's headcount followed a predictable cycle in which headcount steadily increased into the industry's busy season (with increased headcount from February through June).  Since the Defendants formed Josko and started scheming to steal away USHAC's employees, USHAC's overall headcount has dropped relative to prior years, rather than increasing to allow it to handle increased workloads in the busy season as in years past.

65.     During what should have been a significant growth phase in headcount, 2018 headcount reduced each month:

- February 2018 headcount (118 employees) was down more than 15% relative to February 2017 (139 employees)

- March 2018 headcount (105 employees) was down more than 25% relative to March 2017 (141 employees).

- April 2018 headcount (102 employees) was down more than 33% relative to April 2017 (153 employees).

- May 2018 headcount (105 employees) was down more than 33% relative to May 2017 (158 employees).

- June 2018 headcount (93 employees) was down more than 41% relative to June 2017 (159 employees).

66.     Defendants' actions in recruiting away at least 25 key employees of USHAC have contributed to the significant decreases in headcount and in turn have caused USHAC to expend significant time and resources, including at least $50,000 in recruiting costs, to hire new employees to keep its business operating.

67.     On information and belief, Defendants' efforts to disrupt USHAC's business relationships have not been limited to employees. To date, on information and belief, Defendants have taken 28 customers from USHAC as a result of their tortious and wrongful conduct ("Customers 1-28").[5]  USHAC employees have personally seen Josko trucks on-site at each of those customers following bid processes that USHAC lost, and at least one customer has also informed USHAC

---

[5] Defendants are aware of the identities of Customers 1-28 taken from USHAC and Plaintiffs can provide a list of such customers to Defendants' counsel if requested, subject to an appropriate confidentiality order being entered.

directly that Josko was undercutting its bids and USHAC would need to match to maintain its accounts.

68.     USHAC reasonably expected those customer relationships to continue if not for Defendants' interference.  The lengths of the relationships with Customers 1-28, all of which were lost immediately or shortly after Machial's departure, ranged from two (2) years to sixteen (16) years, with an average relationship length of over five (5) years.

69.     Defendants have used and are using USHAC's confidential and proprietary customer and vendor pricing information to steal USHAC's customers.

**IV.     Defendants' Wrongful Conduct Has Caused and Continues to Cause Irreparable Harm to Southern HVAC and USHAC, Both to Their Business Relations and Their Goodwill.**

70.     By the conduct detailed above, Defendants have violated numerous contractual, statutory, and/or common law obligations to Southern HVAC and USHAC.

71.     Defendants used their knowledge of USHAC's confidential information and trade secrets, including information regarding its pricing, customers, vendors, and employees, to solicit and provide services to USHAC's customers, including Customers 1-28, to the detriment of USHAC and to the benefit of USHAC's competitor, Josko.

72.     Believing that Defendants had begun using USHAC's confidential and proprietary information to interfere with its relationships with its customers and employees, Southern HVAC and USHAC took action to stop Defendants from engaging in further misconduct. Specifically, USHAC sent a cease and desist letter to Josko, Justin Konforte, and Philipa Machial on April 12, 2018, to demand that any interference with USHAC's customer and employee relationships cease. But Defendants ignored that letter entirely. Defendants have disregarded any obligations they have to USHAC, continue to operate Josko, continue to employ and solicit USHAC employees, and continue to service and solicit USHAC customers.

73.     USHAC is suffering losses of nearly $3 Million per year in revenue that it would have received through its relationships with Customers 1-28, each of which were taken through Defendants' wrongful conduct. Each of those customers terminated an existing, multi-year relationship with USHAC, negating what had previously been a steady stream of revenue for USHAC. Indeed, USHAC's annual revenue from Customers 1-28 went from a total approaching $3 Million annualized to $0.

74.     If Defendants' wrongful conduct is not enjoined and rectified, USHAC and its parent company Southern HVAC will continue to lose revenue, and associated profits, from Customers 1-28 and other customers that USHAC has solicited.

75.     Defendants have no meritorious defense for their intentional, wrongful conduct and breaches of their contractual, statutory, and common law obligations to Southern HVAC and USHAC, such that Southern HVAC and USHAC have a substantial likelihood of success on the merits.

76.     If an injunction is not issued in this case, Southern HVAC and USHAC will suffer further injury.  In addition to loss of profits, Southern HVAC and USHAC will incur severe, immediate, and irreparable damage, including irreparable damage to its client relationships and goodwill.

77.     The harm that Southern HVAC and USHAC will suffer in this case cannot be compensated entirely by remedies available at law.  Confidentiality of information and relationships with existing customers and employees, and the goodwill that goes along with those relationships, cannot be replaced with sums of money.

78.     Because of the significant harm and business disruption that Southern HVAC and USHAC would suffer if their confidential and proprietary information were to be disclosed and/or used in violation of contract and law, Arie Konforte agreed in two separate agreements that Southern HVAC and/or USHAC would be entitled to injunctive relief for any breach by him.  (Ex. A, § 8; Ex. B, § 14(b)).

79.     The existing, threatened, and continuing injury to Southern HVAC and USHAC far outweighs the damage, if any, Defendants will incur if an injunction

issues in this case. None of the Defendants will suffer any undue harm by complying with their contractual, statutory, and/or common law obligations. Defendants will instead be placed in the same position in which they would have been had they never committed any tortious or unlawful conduct against Southern HVAC and USHAC.

80. Finally, and similarly, an injunction would not harm but would, in fact, benefit the public interest. Specifically, the public interest is benefited by requiring citizens, both individual and corporate alike, to comply with their lawful obligations, be they contractual, statutory, or common law.

# COUNT I

## BREACH OF CONTRACT

### (SOUTHERN HVAC AND USHAC AGAINST ARIE KONFORTE)

81.     Southern HVAC and USHAC repeat and reallege ¶¶ 1 through 12, 15 through 38, 49, 50, 52 through 57, 60 through 69,  and 71 through 80 of this Complaint as and for this ¶ 81, as if fully set forth herein.

82.     The Restrictive Covenants Agreement and Consulting Agreement entered into with Arie Konforte are valid, lawful, and enforceable contracts, containing all essential terms, and supported by good and valuable consideration provided by Southern HVAC and USHAC. (*See e.g.*, ¶¶ 21 through 38). The Restrictive Covenants Agreement and Consulting Agreement also carry with each an implied covenant of good faith and fair dealing.

83.     Southern HVAC and USHAC fully performed their obligations to Arie Konforte under the Restrictive Covenants Agreement and the Consulting Agreement.

84.     Arie Konforte, by his actions set forth above (including without limitation knowingly using and disclosing Southern HVAC and USHAC's confidential information, directly and/or indirectly advising, supporting, and participating in a competing business, and soliciting USHAC's customers and employees), has breached Sections 3 (Confidential Information), 4

(Noncompetition), and 5 (Nonsolicitation) of the Restrictive Covenants Agreement and Sections 5 (Confidentiality), 7 (Noncompetition with the Company), 8 (Nonsolicitation of Customers, Vendors, and Suppliers), and 9 (Nonsolicitation of Employees) of the Consulting Agreement, and has acted in bad faith in violation of his implied covenants under the Restrictive Covenants Agreement and Consulting Agreement.

85.     The actions of Arie Konforte, as described above, have caused Southern HVAC and USHAC to incur severe injury in the form of lost confidential information, trade secrets, employees, and customers taken by Josko and, unless those actions are restrained, Southern HVAC and USHAC will continue to lose revenue associated with that information and those employees and customers.  Arie Konforte's breaches have also caused Southern HVAC and USHAC to incur costs and expenses, including attorneys' fees, which are recoverable pursuant to the Restrictive Covenants Agreement.  (*See* Ex. A, § 9(h)).

86.     Arie Konforte's actions have also caused and, unless restrained, will continue to cause, irreparable damage to Southern HVAC and USHAC's customer and employee relationships and goodwill, for which Southern HVAC and USHAC have no adequate remedy at law.

WHEREFORE, Southern HVAC and USHAC pray that judgment be entered in their favor and against Arie Konforte for Count I for Breach of Contract,

and that this Court enter an Order: (1) enjoining Arie Konforte, individually or through any individual or entity acting in concert with him, from violating the Restrictive Covenants Agreement and the Consulting Agreement; and (2) awarding Southern HVAC and USHAC actual damages as a result of Arie Konforte's breaches; and (3) awarding reasonable costs and expenses incurred with respect to this claim pursuant Section 9(h) of the Restrictive Covenants Agreement, including but not limited to attorneys' fees; and (4) awarding Southern HVAC and USHAC such other legal and equitable relief as the interests of justice may allow.

## COUNT II

## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT

### (USHAC AGAINST ALL DEFENDANTS)

87.  Southern HVAC and USHAC repeat and reallege ¶¶ 1 through 8, 10 through 69, and 71 through 80 of this Complaint as and for this ¶ 87, as if fully set forth herein.

88.  As described above, USHAC has certain confidential and proprietary information that constitute its trade secrets. For example, information regarding USHAC's customer and vendor pricing, profit margins, and other customer information all derive economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who might

obtain economic value from their disclosure or use. At all relevant times, USHAC has taken reasonable and necessary measures to safeguard the secrecy and confidentiality of its trade secrets, which are valuable and lucrative assets of USHAC.

89. Philipa Machial, Justin Konforte, and Arie Konforte were given access to USHAC's trade secrets under circumstances giving rise to their duty to maintain the confidentiality of such information and to limit its use to the intended purposes for which such information was disclosed. Such trade secrets at all times were and still are the property of USHAC. Josko, through Philipa Machial, Justin Konforte, and Arie Konforte, was also aware that such trade secrets were the property of USHAC.

90. By engaging in the conduct described throughout this Complaint, Defendants have misappropriated USHAC's trade secrets, without the consent of USHAC, to USHAC's detriment and for their own commercial advantage, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq*.

91. Specifically, USHAC's trade secrets were misappropriated because (1) they were acquired by Josko, a competitor of USHAC, through improper means in violation of Arie Konforte's promise to comply at all times with the confidentiality terms of the Restrictive Covenants Agreement and Consulting Agreement and in violation of Machial's and Justin Konforte's duties of loyalty and fiduciary duties to

USHAC; (2) they were improperly disclosed by Arie Konforte, Justin Konforte, and Machial to Josko, which acquired the trade secrets knowing that they were disclosed in violation of Arie Konforte's promise to comply at all times with the confidentiality terms of the Restrictive Covenants Agreement and Consulting Agreement and in violation of Machial's and Justin Konforte's duties of loyalty and fiduciary duties to USHAC and without USHAC's consent; and (3) they have been improperly used by Defendants to benefit themselves and their business to the detriment of USHAC and without USHAC's consent.

92. Defendants' actions, as described above, have caused Southern HVAC and USHAC to incur severe injury in the form of lost confidential information, trade secrets, employees, and customers taken by Josko and, unless those actions are restrained, Southern HVAC and USHAC will continue to lose revenue associated with that information and those employees and customers. Defendants' conduct has also unjustly enriched themselves to the detriment of USHAC.

93. Defendants' actions, as described above, have also caused and, unless restrained, will continue to cause irreparable damage to USHAC's customer and employee relationships and goodwill, for which USHAC has no adequate remedy at law.

94. Defendants' actions, as described above, also evidence such willful and malicious misappropriation of USHAC's trade secrets as to warrant the imposition

of exemplary damages, pursuant to 18 U.S.C. § 1836(b)(3)(C), in an amount up to double any award of actual damages pursuant to this Count II, and an award of USHAC's attorneys' fees, pursuant to 18 U.S.C. § 1836(b)(3)(D).

95.     Defendants' actions, as described above, also warrant the imposition of punitive damages under Florida law in that they show willful and intentional misconduct taken with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result.

WHEREFORE, USHAC prays that judgment be entered in its favor and against Defendants on Count II for Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act, and that this Court enter an Order: (1) awarding injunctive relief restraining Defendants from any further trade secret violations pursuant to 18 U.S.C. § 1836(b)(3)(A); (2) awarding USHAC damages, including compensatory damages, restitution for unjust enrichment, and exemplary or punitive damages; (3) awarding USHAC its reasonable attorneys' fees and expenses incurred in this action pursuant to 18 U.S.C. § 1836(b)(3)(D); and (4) awarding USHAC such other legal and equitable relief as the interests of justice may allow.

## COUNT III

## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE FLORIDA UNIFORM TRADE SECRETS ACT

### (USHAC AGAINST ALL DEFENDANTS)

96. Southern HVAC and USHAC repeat and reallege ¶¶ 1 through 8, 10 through 69, and 71 through 80 of this Complaint as and for this ¶ 96, as if fully set forth herein.

97. As described above, USHAC has certain confidential and proprietary information that constitute its trade secrets. For example, information regarding USHAC's customer and vendor pricing, profit margins, and other customer information all derive economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who might obtain economic value from their disclosure or use. At all relevant times, USHAC has taken reasonable and necessary measures to safeguard the secrecy and confidentiality of its trade secrets, which are valuable and lucrative assets of USHAC.

98. Philipa Machial, Justin Konforte, and Arie Konforte were given access to USHAC's trade secrets under circumstances giving rise to a duty to maintain the confidentiality of such information and to limit its use to the intended purposes for which such information was disclosed. Such trade secrets at all times were and still are the property of USHAC. Josko, through Philipa Machial, Justin Konforte, and Arie Konforte, was also aware that such trade secrets were the property of USHAC.

99. By engaging in the conduct described throughout this Complaint, Defendants have misappropriated USHAC's trade secrets, without the consent of

USHAC, to USHAC's detriment and for their own commercial advantage, in violation of the Florida Uniform Trade Secrets Act, § 688.001, Fla. Stat., *et seq*.

100. Specifically, USHAC's trade secrets were misappropriated because (1) they were acquired by Josko, a competitor of USHAC, through improper means in violation of Arie Konforte's promise to comply at all times with the confidentiality terms of the Restrictive Covenants Agreement and Consulting Agreement and in violation of Machial's and Justin Konforte's duties of loyalty and fiduciary duties to USHAC; (2) they were improperly disclosed by Arie Konforte, Justin Konforte, and Machial to Josko, which acquired the trade secrets knowing that they were disclosed in violation of Arie Konforte's promise to comply at all times with the confidentiality terms of the Restrictive Covenants Agreement and Consulting Agreement and in violation of Machial's and Justin Konforte's duties of loyalty and fiduciary duties to USHAC and without USHAC's consent; and (3) they have been improperly used by Defendants to benefit themselves and their business to the detriment of USHAC and without USHAC's consent.

101. Defendants' actions, as described above, have caused USHAC to incur severe injury in the form of lost confidential information, trade secrets, employees, and customers taken by Josko and, unless those actions are restrained, Southern HVAC and USHAC will continue to lose revenue associated with that information

and those employees and customers. Defendants' conduct has also unjustly enriched themselves to the detriment of USHAC.

102.   Defendants' actions, as described above, have also caused and, unless restrained, will continue to cause, irreparable damage to USHAC's customer and employee relationships and goodwill for which USHAC has no adequate remedy at law.

103.   Defendants' actions, as described above, also evidence such willful and malicious misappropriation of USHAC's trade secrets as to warrant the imposition of exemplary damages, pursuant to § 688.004, Fla. Stat., in an amount up to double any award of actual damages pursuant to this Count III, and an award of USHAC's attorneys' fees, pursuant to § 688.005, Fla. Stat.

104.   Defendants' actions, as described above, also warrant the imposition of punitive damages under Florida law in that they show willful and intentional misconduct taken with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result.

WHEREFORE, USHAC prays that judgment be entered in its favor and against Defendants on Count III for Misappropriation of Trade Secrets in Violation of the Florida Uniform Trade Secrets Act, and that this Court enter an Order:   (1) awarding injunctive relief restraining Defendants from any further trade secret violations pursuant to § 688.003, Fla. Stat.; (2) awarding

USHAC damages, including compensatory damages, restitution for unjust enrichment, and exemplary or punitive damages; (3) awarding USHAC its reasonable attorneys' fees and expenses incurred in this action pursuant to § 688.005, Fla. Stat.; and (4) awarding USHAC such other legal and equitable relief as the interests of justice may allow.

**COUNT IV**

**<u>TORTIOUS INTERFERENCE WITH  ADVANTAGEOUS BUSINESS RELATIONS</u>**

**(USHAC AGAINST ALL DEFENDANTS)**

105.   Southern HVAC and USHAC repeat and reallege ¶¶ 1 through 8, 10 through 35, 37, 38, 49 through 61, 67 through 69, and 71 through 80 of this Complaint as and for this ¶ 105, as if fully set forth herein.

106. USHAC had advantageous business relationships with each of Customers 1-28.

107. Defendants, having knowledge of the existence of the business relationships between USHAC and Customers 1-28, including the probability of future economic benefit to USHAC from those relationships, intentionally and unjustifiably induced Customers 1-28 to end their relationships with USHAC. Specifically, Defendants have used their knowledge of confidential and proprietary information and their relationships with USHAC's customers to knowingly and wrongfully undercut USHAC's customer pricing, discourage Customers 1-28 from

36

continuing to do business with USHAC, and to convince Customers 1-28 to bring their business to Josko. In doing so, Defendants acted purposely and with malice with the intent to injure USHAC, Josko's competitor. On information and belief, Arie Konforte, Justin Konforte, and Philipa Machial personally participated in the tortious conduct engaged directly and on behalf of Josko.

108. If not for Defendants' wrongful conduct, it was reasonably probable that USHAC's established business relationships with Customers 1-28 would have continued unabated for the foreseeable future. Specifically, before Defendants' wrongful conduct, the relationships with each such customer had existed for, on average, more than five (5) years, and neither the customers nor anyone on their behalf had indicated any intent to terminate the relationship.

109. Defendants, through improper intents and methods, have enabled Josko to receive business from Customers 1-28 that was previously sent to USHAC. Absent Defendants' collective misconduct, USHAC would have continued its business relationships with those clients as each existed before Defendants' misconduct.

110. Arie Konforte, Justin Konforte, and Philipa Machial, each as an officer, employee, consultant, or advisor to Josko, took part in and specifically directed the commission of the tortious conduct described herein, such that each is personally liable for their conduct on behalf of Josko, in addition to their own wrongful conduct.

111. By engaging in the conduct described herein, Defendants have unjustifiably, intentionally, and wrongfully interfered with USHAC's advantageous business relationships for their own benefit, without right or justification, and at the expense of USHAC.

112. Defendants' actions, as described above, have caused USHAC to incur severe injury in the form of lost revenue for Customers 1-28 and, unless Defendants are restrained, USHAC will continue to lose revenue due to the loss of those customers and additional customers.

113. Defendants' actions, as described and evidenced above, have also caused and, unless restrained, will continue to cause, irreparable damage to USHAC's customer relationships, reputation, and goodwill, for which USHAC has no adequate remedy at law.

114. Defendants' actions, as described above, also warrant the imposition of punitive damages under Florida law in that they show willful and intentional misconduct taken with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result.

WHEREFORE, USHAC prays that judgment be entered in its favor and against Defendants on Count IV for Tortious Interference with Advantageous Business Relations, and that this Court enter an Order: (1) awarding injunctive relief restraining Defendants from further interference with

USHAC's advantageous business relationships with its current, former, and prospective customers, including Customers 1-28; (2) awarding USHAC damages, including compensatory and punitive damages; and (3) awarding USHAC such other legal and equitable relief as the interests of justice may allow.

**COUNT V**

**<u>BREACH OF DUTY OF LOYALTY AND FIDUCIARY DUTY</u>**

**(USHAC AGAINST JUSTIN KONFORTE AND PHILIPA MACHIAL)**

115.    Southern HVAC and USHAC repeat and reallege ¶¶ 1 through 8, 10 through 11, 13, 14, 16 through 19, 39 through 69, and 71 through 80 of this Complaint as and for this ¶ 115, as if fully set forth herein.

116.    As employees of USHAC that held positions of trust and confidence with regard to USHAC's confidential and proprietary information and customers, Justin Konforte and Philipa Machial owed it a duty of loyalty and fiduciary duties. (*See e.g.*, ¶¶ 39 through 48).

117.    By engaging in the conduct described throughout this Complaint, Justin Konforte and Philipa Machial have breached their duties of loyalty and fiduciary duties to USHAC.  Specifically, Justin Konforte and Philipa Machial each breached their duties by starting and participating in a competing business during their employment with USHAC and then using and conspiring with others to use

USHAC's confidential and proprietary information, customers, and employees to grow that competitive business while still employed at USHAC.

118. Justin Konforte's and Philipa Machial's actions, as described above, have caused USHAC to incur severe injury in the form of lost confidential information, trade secrets, employees, and customers taken by Josko and, unless those actions are restrained, Southern HVAC and USHAC will continue to lose revenue associated with that information and those employees and customers.

119. Defendants' actions, as described above, have also caused and, unless restrained, will continue to cause, irreparable damage to USHAC's customer and employee relationships, reputation, and goodwill, for which USHAC has no adequate remedy at law.

120. Defendants' actions, as described above, also warrant the imposition of punitive damages under Florida law in that they show willful and intentional misconduct taken with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result.

WHEREFORE, USHAC prays that judgment be entered in its favor and against Justin Konforte and Philipa Machial on Count V for Breach of Duty of Loyalty and Fiduciary Duty, and that this Court enter an Order: (1) awarding injunctive relief restraining Justin Konforte and Philipa Machial from competing with USHAC based on the fruits of their unlawful and

tortious conduct against USHAC; (2) awarding USHAC damages, including compensatory and punitive damages; and (3) awarding USHAC such other legal and equitable relief as the interests of justice may allow.

## COUNT VI

## BREACH OF FIDUCIARY DUTY

### (USHAC AGAINST ARIE KONFORTE)

121.  Southern HVAC and USHAC repeat and reallege ¶¶ 1 through 8, 10 through 12, 16 through 38, 49 through 52, 54 through 57, 60 through 69, and 71 through 80 of this Complaint as and for this ¶ 121, as if fully set forth herein.

122.  As a consultant of USHAC that held a position of trust and confidence with regard to USHAC's confidential and proprietary information, Arie Konforte owed it a fiduciary duty.

123.  By engaging in the conduct described throughout this Complaint, Arie Konforte has breached his fiduciary duty to USHAC.  Specifically, during the course of Arie Konforte's consulting relationship with USHAC, he used his position and access to confidential and proprietary information, customers, and employees to build and support, and conspire with others to build and support, a competing business.

124.  Arie Konforte's actions, as described above, have caused USHAC to incur severe injury in the form of lost confidential information, trade secrets,

employees, and customers taken by Josko and, unless those actions are restrained, Southern HVAC and USHAC will continue to lose revenue associated with that information and those employees and customers.

125. Arie Konforte's actions, as described above, have also caused and, unless restrained, will continue to cause, irreparable damage to USHAC's customer and employee relationships, reputation, and goodwill, for which USHAC has no adequate remedy at law.

126. Arie Konforte's actions, as described above, also warrant the imposition of punitive damages under Florida law in that they show willful and intentional misconduct taken with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result.

WHEREFORE, USHAC prays that judgment be entered in its favor and against Arie Konforte on Count VI for Breach of Fiduciary Duty, and that this Court enter an Order: (1) awarding injunctive relief restraining Arie Konforte from competing with USHAC based on the fruits of his unlawful and tortious conduct against USHAC; (2) awarding USHAC damages, including compensatory and punitive damages; and (3) awarding USHAC such other legal and equitable relief as the interests of justice may allow.

## COUNT VII

# AIDING AND ABETTING BREACH OF DUTY OF LOYALTY AND FIDUCIARY DUTY

## (USHAC AGAINST ALL DEFENDANTS)

127.    Southern HVAC and USHAC repeat and reallege ¶¶ 1 through 25, 29 through 69, and 71 through 80 of this Complaint as and for this ¶ 127, as if fully set forth herein.

128.    As employees of USHAC that held positions of trust and confidence with regard to USHAC's confidential and proprietary information and customers, Justin Konforte and Philipa Machial owed it a duty of loyalty and fiduciary duties.

129.    As a consultant of USHAC that held a position of trust and confidence with regard to USHAC's confidential and proprietary information, Arie Konforte owed it a fiduciary duty.

130.    Each of the Defendants knew of the duties owed to USHAC by Arie Konforte, Justin Konforte, and Philipa Machial:

a.    Arie Konforte knew that, as employees of USHAC that held positions of trust and confidence with regard to USHAC's confidential and proprietary information and customers, Justin Konforte and Philipa Machial owed USHAC a duty of loyalty and fiduciary duties.

b.    Justin Konforte, knew that (i) as a consultant to USHAC that held a position of trust and confidence with regard to USHAC's confidential and

proprietary information, Arie Konforte owed USHAC a fiduciary duty, and (ii) as an employee of USHAC that held a position of trust and confidence with regard to USHAC's confidential and proprietary information and customers, Philipa Machial owed USHAC a duty of loyalty and a fiduciary.

c. Philipa Machial knew that (i) as a consultant to USHAC that held a position of trust and confidence with regard to USHAC's confidential and proprietary information, Arie Konforte owed USHAC a fiduciary duty, and (ii) as an employee of USHAC that held a position of trust and confidence with regard to USHAC's confidential and proprietary information and customers, Justin Konforte owed USHAC a duty of loyalty and a fiduciary duty.

d. Josko knew that (i) Arie Konforte, as a consultant to USHAC that held a position of trust and confidence with regard to USHAC's confidential and proprietary information, owed USHAC a fiduciary duty, and that (ii) Justin Konforte and Philipa Machial, as employees of USHAC that held positions of trust and confidence with regard to USHAC's confidential and proprietary information and customers, owed USHAC a duty of loyalty and fiduciary duties.

131. As noted above, by engaging in the conduct described throughout this Complaint, Justin Konforte and Philipa Machial have breached their duties of loyalty

and fiduciary duties to USHAC and Arie Konforte has breached his fiduciary duty to USHAC.

132.   By engaging in the conduct described throughout this Complaint, the Defendants have provided substantial assistance and encouragement to each of Justin Konforte, and Philipa Machial with regard to their breaches of their duties of loyalty and fiduciary duties to USHAC and to Arie Konforte with regard to his breaches of his fiduciary duty to USHAC.

133.   Defendants' actions, as described above, have caused USHAC to incur severe injury in the form of lost confidential information, trade secrets, employees, and customers taken by Josko and, unless those actions are restrained, Southern HVAC and USHAC will continue to lose revenue associated with that information and those employees and customers.

134.   Defendants' actions, as described above, have also caused and, unless restrained, will continue to cause, irreparable damage to USHAC's customer and employee relationships, reputation, and goodwill, for which USHAC has no adequate remedy at law.

135.   Defendants' actions, as described above, also warrant the imposition of punitive damages under Florida law in that they show willful and intentional misconduct taken with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result.

WHEREFORE, USHAC prays that judgment be entered in its favor and against Defendants on Count VII for Aiding and Abetting Breach of Duty of Loyalty and Fiduciary Duty, and that this Court enter an Order: (1) awarding injunctive relief restraining Defendants from competing with USHAC based on the fruits of their unlawful and tortious conduct against USHAC; (2) awarding USHAC damages, including compensatory and punitive damages; and (3) awarding USHAC such other legal and equitable relief as the interests of justice may allow.

## COUNT VIII

## CIVIL CONSPIRACY

### (SOUTHERN HVAC AND USHAC AGAINST ARIE KONFORTE, JUSTIN KONFORTE, AND PHILIPA MACHIAL)

136.    Southern HVAC and USHAC repeat and reallege ¶¶ 1 through 36, 38 through 69, and 71 through 80 of this Complaint as and for this ¶ 136, as if fully set forth herein.

137.    On information and belief, Arie Konforte, Justin Konforte, and Philipa Machial conspired with one another to, and did in fact, commit tortious conduct against Southern HVAC and USHAC, specifically:  (a) tortiously interfering with USHAC's advantageous business relations; and (b) misappropriating USHAC's trade secrets.

138.     Defendants' actions, as described above, have caused USHAC to incur severe injury in the form of lost confidential information, trade secrets, employees, and customers taken by Josko and, unless those actions are restrained, Southern HVAC and USHAC will continue to lose revenue associated with that information and those employees and customers.

139.     Defendants' actions, as described above, have also caused and, unless restrained, will continue to cause, irreparable damage to USHAC's customer relationships, reputation, and goodwill, for which USHAC has no adequate remedy at law.

140.     Defendants' actions, as described above, also warrant the imposition of punitive damages under Florida law in that they show willful and intentional misconduct taken with actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result.

WHEREFORE, Southern HVAC and USHAC pray that judgment be entered in their favor and against Defendants on Count VIII for Civil Conspiracy, and that this Court enter an Order: (1) awarding injunctive relief restraining Defendants from competing with Southern HVAC and USHAC based on the fruits of their unlawful and tortious conduct against Southern HVAC and USHAC; (2) awarding Southern HVAC and USHAC damages, including compensatory and punitive damages; and (3) awarding Southern HVAC and

USHAC such other legal and equitable relief as the interests of justice may allow.

## COUNT IX

## UNJUST ENRICHMENT

## (SOUTHERN HVAC AND USHAC AGAINST ALL DEFENDANTS)

141.    Southern HVAC and USHAC repeat and reallege ¶¶ 1 through 69 and 71 through 80 of this Complaint as and for this ¶ 141, as if fully set forth herein.

142.    Southern HVAC and USHAC provided Arie Konforte with benefits—specifically, monetary consideration provided for the purpose of his business and consulting fees, as well as access to confidential and proprietary information regarding Southern HVAC's business—that is of great value to both Southern HVAC and USHAC and any entity wishing to compete with either of them.

143.    USHAC provided Justin Konforte and Philipa Machial with benefits—specifically, compensation and access to confidential and proprietary information regarding USHAC's business—that is of great value to USHAC and any entity wishing to compete with USHAC.

144.    Arie Konforte, Justin Konforte, and Philipa Machial accepted those benefits conferred on them by Southern HVAC and USHAC and used the benefits to both finance a competing venture, gain knowledge of the utility of USHAC's

services to Customers 1-28 and to build out Josko's business and establish its footing as a competitor to USHAC.

145.    Defendants' actions, as described above, have caused Southern HVAC and USHAC to incur severe injury in the form of lost confidential information, trade secrets, employees, and customers taken by Josko and, unless those actions are restrained, Southern HVAC and USHAC will continue to lose revenue associated with that information and those employees and customers.

146.    Defendants' actions, as described above, have also caused and, unless restrained, will continue to cause, irreparable damage to USHAC's customer and employee relationships and goodwill, for which USHAC has no adequate remedy at law.

147.    In light of the benefits conferred on Arie Konforte, Justin Konforte, and Philipa Machial by USHAC providing them with access to its confidential and proprietary information in addition to monetary consideration, and the revenues flowing to Josko because of the other Defendants' use of that USHAC's confidential and proprietary information, it would be inequitable for Defendants to retain the benefit of those benefits without paying Southern HVAC and USHAC for the value of the benefits provided.

WHEREFORE, Southern HVAC and USHAC pray that judgment be entered in their favor and against Defendants on Count IX for Unjust Enrichment, and

that this Court enter an Order: (1) awarding injunctive relief restraining Defendants from competing with Southern HVAC and USHAC based on the fruits of their inequitable conduct against Southern HVAC and USHAC; (2) awarding Southern HVAC and USHAC damages, including for Defendants' unjust enrichment; and (3) awarding Southern HVAC and USHAC such other legal and equitable relief as the interests of justice may allow.

## COUNT X

## CONVERSION

## (USHAC AGAINST PHILIPA MACHIAL)

148.    Southern HVAC and USHAC repeat and reallege ¶¶ 6 through 8, 10, 11, 14, 16 through 19, 39, 41 through 49, 51 through 53, 55, 56, 59, 69 through 77, 79, and 80 of this Complaint as and for this ¶ 148, as if fully set forth herein.

149.    The confidential and proprietary documents and files (both hard copy and electronic), including its customer lists and pricing information and documents, that Machial took from USHAC were USHAC's property.

150.    By taking those documents and files, Machial has wrongfully asserted an act of dominion over USHAC's property that is inconsistent with the actual ownership of the property.

151.    In the cease and desist letter sent to Machial by the undersigned counsel, it demanded that Machial return all of USHAC's confidential and

proprietary information in her possession. To date, she has not returned the requested confidential or proprietary information.

152. Machial's actions, as described above, have caused USHAC to incur severe injury in the form of lost confidential information, trade secrets, employees, and customers taken by Josko and, unless those actions are restrained, Southern HVAC and USHAC will continue to lose revenue associated with that information and those employees and customers.

153. Machial's actions, as described above, have also caused and, unless restrained, will continue to cause, irreparable damage to USHAC's customer, employee, and vendor relationships and goodwill, for which USHAC has no adequate remedy at law.

WHEREFORE, USHAC prays that judgment be entered in its favor and against Philipa Machial on Count X for Conversion, and that this Court enter an Order: (1) awarding injunctive relief restraining Machial from competing with USHAC based on the fruits of her inequitable conduct against USHAC; (2) awarding USHAC damages, including lost profits from customers taken from USHAC using information contained in the confidential and proprietary information taken; and (3) awarding USHAC such other legal and equitable relief as the interests of justice may allow.

## PRAYER FOR RELIEF

WHEREFORE, Southern HVAC and USHAC respectfully pray for the following relief against Defendants:

A.   Actual damages, in an amount to be determined at trial, for:

    1.   Arie Konforte's breaches of the Restrictive Covenants Agreement, breaches of the Consulting Agreement, and breaches of his fiduciary duty to USHAC;

    2.   Philipa Machial's breaches of her duty of loyalty and fiduciary duty to USHAC and conversion of USHAC property;

    3.   Justin Konforte's breaches of his duty of loyalty and fiduciary duty to USHAC;

    4.   All Defendants' misappropriation of USHAC's trade secrets;

    5.   All Defendants' tortious interference with USHAC's contractual and business relations;

    6.   All Defendants' aiding and abetting the breaches of duties owed to USHAC by Arie Konforte, Justin Konforte, and Philipa Machial;

    7.   Defendants' civil conspiracy to commit the foregoing acts; and,

    8.   Defendants' unjust enrichment;

B.      An injunction prohibiting Defendants, whether acting on their own or anyone else's behalf, from:

1.      Performing any further services for Customers 1-28 or any other current or former Southern HVAC or USHAC customer solicited by Defendants;

2.      Receiving any further remuneration for services already performed for Customers 1-28 or any other current or former Southern HVAC or USHAC customer solicited by Defendants; and,

3.      Further using or disclosing any of Southern HVAC's or USHAC's confidential information, including, without limitation, their pricing information and strategies, vendor and supplier information, profit margins, customer information, and employee information;

C.      Exemplary or punitive damages for Defendants' willful and malicious misconduct;

D.      Southern HVAC and USHAC's attorneys' fees and costs for bringing this action; and,

E.    Such other and further relief as the Court deems just and proper.

Dated:  September 28, 2018

**DLA PIPER LLP (US)**


By: /s/ Amanda E. Reagan
        Fredrick H.L. McClure
        Florida Bar No. 147354
        Amanda E. Reagan
        Florida Bar No. 92520
        DLA Piper LLP (US)
        3111 W. Dr. Martin Luther King Jr. Blvd.
        Suite 300
        Tampa, Florida 33607-6233
        (813) 229-2111 (phone)
        (813) 229-1447 (facsimile)
        Email:  fredrick.mcclure@dlapiper.com
                amy.reagan@dlapiper.com
                sheila.hall@dlapiper.com


*Pro Hac Vice admission to be submitted:*

Jamie M. Konn
James M. Rusert
DLA Piper LLP (US)
1201 West Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 736-7800 (phone)
(404) 682-7800 (facsimile)
Email:  jamie.konn@dlapiper.com
        james.rusert@dlapiper.com

*Attorneys for Plaintiffs Southern HVAC Corporation and Fast of Florida, Inc., as successor-by-merger to U.S. H&AC, LLC*