# EXHIBIT A

**Execution Version**

## NONCOMPETITION, NONSOLICITATION
## AND CONFIDENTIALITY AGREEMENT

This NONCOMPETITION, NONSOLICITATION AND CONFIDENTIALITY AGREEMENT (this "Agreement") is made effective as of February 1, 2017 (the "Effective Date"), by and among U.S. H&AC, LLC, a Delaware limited liability company (the "Purchaser"), Southern HVAC Corporation, a Delaware corporation and the sole shareholder of the Purchaser ("Parent"), U.S. Heating & Air Conditioning, Inc., a Florida corporation (the "Company"), and Arie Konforte ("Shareholder," along with the Company, collectively, the "Seller Parties" and each, individually, a "Seller Party"). This Agreement is being entered into in connection with that certain Asset Purchase Agreement, dated February 1, 2017 (the "Asset Purchase Agreement"), by and among the Seller Parties and the Purchaser. Except as otherwise defined herein or as the context may otherwise require, all capitalized or defined terms herein shall have the same meaning as ascribed to them in the Asset Purchase Agreement.

WHEREAS, the Shareholder is the sole shareholder of the Company and owns all of the issued and outstanding equity securities of the Company;

WHEREAS, the Asset Purchase Agreement provides for the sale of the Acquired Assets by the Company to the Purchaser (the "Sale");

WHEREAS, in exchange for the Acquired Assets, the Purchaser is delivering the Transaction Consideration to the Company as described in the Asset Purchase Agreement;

WHEREAS, the execution and delivery of this Agreement by the parties is a condition to Closing as required by the Asset Purchase Agreement;

WHEREAS, the Purchaser would not be willing to enter into the Asset Purchase Agreement or consummate the transactions contemplated thereunder unless the Seller Parties agreed to be bound by the terms of this Agreement;

WHEREAS, to induce the Purchaser to enter into the Asset Purchase Agreement and consummate the transactions contemplated thereby, the Seller Parties have agreed to enter into this Agreement.

NOW THEREFORE, in consideration of the premises, the mutual promises and covenants of the parties hereto set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Seller Parties, the Purchaser and Parent, intending to be legally bound, agree as follows:

1.   Definitions.  As used herein, the capitalized terms set forth below shall have the following respective meanings. Any such terms, unless the context otherwise requires, may be used in the singular or plural, depending upon the reference.

"*Affiliate*" means, with respect to any specified Person, any other Person that directly, or indirectly through one or more intermediaries, Controls, is Controlled by, or is under common Control with, such specified Person.

"*Assets*" means all of the Group Companies' rights, assets and properties of every kind which are used in the operation of the Business by the Group Companies, including, all property, tangible and intangible, real, personal or mixed, inventory, intellectual property, accounts receivable, prepayments, contracts, claims, permits and Records of the Group Companies.

2

"*Business*" means the business of providing heating and air conditioning installation, maintenance, repair and replacement services, including new installation services for homebuilders and retrofit and maintenance services, as well as electrical and plumbing services, in each case, for homeowners, property management & home warranty companies, multi-family housing and other residential businesses, as currently conducted by the Company.

"*Confidential Information*" means, with respect to a particular Person and its Affiliates, all information of a confidential or proprietary nature (whether or not specifically labeled or identified as "confidential"), in any form or medium, that relates to the business, products, or research and development of such Person or its Affiliates, including the following: (a) internal business and financial information; (b) identities of, individual requirements of, specific contractual arrangements with, and information about, suppliers, distributors or customers; (c) trade secrets, know-how, analyses, techniques, systems, formulae, research and development information, Records, reports, manuals, drawings, specifications, designs, plans, proposals, technical data, documentation, models, data and databases relating thereto, manufacturing processes and techniques, financial and marketing plans and customer and supplier lists and information; and (d) inventions, innovations, improvements, developments and methods (whether or not patentable). Notwithstanding the foregoing, "*Confidential Information*" shall not include information, data, knowledge or know-how that (i) enters the public domain or becomes publically available through no violation of this Agreement by the party (or its Affiliates), or any of their respective representatives or agents, which has the obligation of confidentiality; (ii) is received from a third party not under obligation of confidentiality to the party (or its Affiliates), or any of their respective representatives or agents which has the obligation of confidentiality; or (iii) is independently developed without reliance on any Confidential Information.

"*Control*" means, with respect to a particular Person, the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise (the terms "*Controlled by*" and "*under common Control with*" shall have correlative meanings).

"*Governmental Entity*" means any government or political subdivisions thereof, court, arbitral tribunal, administrative agency or commission or any other governmental or regulatory body, instrumentality or authority, whether domestic (federal, state or local) or foreign.

"*Group Companies*" means, collectively, Purchaser, Parent and each of their respective Affiliates and Subsidiaries, and each, individually, a "*Group Company*".

"*Person*" means any natural person, a sole proprietorship, a corporation, a partnership, a limited liability company, a joint venture, an association, a trust, or any other entity or organization, including a Governmental Entity.

"*Records*" means all records, documents and lists pertaining to the Assets, the Business or liabilities of the Group Companies, including lists of customers, suppliers or personnel, all product, business and marketing plans and all books, ledgers, files and business records.

"*Subsidiary*" means a corporation or other entity of which at least a majority of the voting power or value of the equity securities or equity interests is owned, directly or indirectly, by any Group Company.

2. Acknowledgement. The Seller Parties are familiar with the trade secrets and other Confidential Information concerning the Group Companies and their respective Subsidiaries. Therefore, and in further consideration of the compensation to be paid under the Asset Purchase Agreement, each

Seller Party agrees to the covenants set forth in this Agreement and acknowledges that (a) the covenants set forth in this Agreement are reasonably limited in time and in all other respects, (b) the covenants set forth in this Agreement are reasonably necessary for the protection of the Purchaser, (c) the Purchaser would not have entered into the Asset Purchase Agreement but for Seller Parties' agreement to the restrictions set forth in this Agreement and (iv) the covenants set forth in this Agreement have been made in order to induce the Purchaser to enter into the Asset Purchase Agreement.

3. Confidential Information. Each Seller Party covenants and agrees that such Seller Party will keep confidential and not directly or indirectly divulge to anyone nor use or otherwise appropriate for such Seller Party's own benefit, any Confidential Information. The duration of the covenant of each Seller Party set forth in this Section 3 shall apply without limitation in time to the extent relevant information remains Confidential Information. Each Seller Party hereby acknowledges and agrees that the prohibitions against disclosure of the Confidential Information recited herein are in addition to, and not in lieu of any rights or remedies which the Purchaser and/or Parent may have available pursuant to the laws of any jurisdiction or at common law to prevent the disclosure of trade secrets, and the enforcement by the Purchaser or Parent of their rights and remedies pursuant to this Agreement shall not be construed as a waiver of any other rights or available remedies which either or both may possess in law or equity absent this Agreement. The obligations of the Seller Parties under this Section 3 shall not apply to information which: (a) is or becomes generally available to the public without breach of the commitment provided for in this Section 3; or (b) is required to be disclosed by law, order or regulation of a court or tribunal or government authority; provided, however, that in any such case, the Seller Parties shall notify the Purchaser as early as reasonably practicable prior to disclosure to allow the Purchaser to take appropriate measures to preserve the confidentiality of such information.

4. Noncompetition. Each Seller Party covenants and agrees that, during the period commencing on the Effective Date and ending on the fifth (5th) anniversary thereof (the "Restricted Period"), such Seller Party shall, and shall cause any Person under such Seller Party's control not to (and shall not otherwise assist any other Person to), in any manner, directly or indirectly, jointly or individually, on such Seller Party's own behalf or in conjunction with or for the benefit of any other party (whether as an owner, operator, manager, consultant, officer, director, employee, investor, agent, representative or otherwise): (a) engage in, or assist others in engaging in, any business that is the same as, similar to or competitive with the Business; (b) establish or own any financial, beneficial or other interest in (other than any interest consisting of less than one percent (1%) of a class of publicly traded security) any Person that directly or indirectly engages in any business that is the same as, similar to or competitive with the Business; or (c) make any loan to or for the benefit of, render any managerial, marketing or other advice or assistance to, or permit such Seller Party's name to be used in connection with any Person that directly or indirectly engages in any business that is the same as, similar to or competitive with the Business, in each case, in any geographical area any Group Company or any of its Subsidiaries conducts business during the Restricted Period.

5. Nonsolicitation. Each Seller Party covenants and agrees that, during the Restricted Period, such Seller Party shall not, and shall cause any Person under such Seller Party's control not to (and such Seller Party shall not otherwise assist any other Person to), directly or indirectly (a) induce or attempt to induce any employee or consultant to any Group Company or any of its Subsidiaries to leave the employ or engagement of such Group Company or any of its Subsidiaries, or in any way interfere with the relationship between any member of any Group Company or any of their respective Subsidiaries and any of their respective employees or independent contractors, (b) hire or engage any person who was an employee or consultant to any Group Company or any of their respective Subsidiaries as of the date of this Agreement or at any time one year prior to the date of this Agreement, (c) solicit or induce or attempt to induce any customer, supplier or other business relation of any member of the Group Companies or any of their respective Subsidiaries (or any prospective customer, supplier, or other business relation with

3

which any member of any Group Company or any of their respective Subsidiaries has entertained discussions regarding a prospective business relationship) (each, a "*Business Relation*") to cease or refrain from doing business with such Group Company or any of its Subsidiaries, or in any way interfere with the relationship (or prospective relationship) between any such Business Relation (including, without limitation, making any negative statements or communications about any Group Company or any of their respective Subsidiaries, equityholders, directors, officers or employees), or (d) enter into any business relationship involving the Business with any Business Relation or in any way interfere with the relationship (or prospective relationship) between any Business Relation and any Group Company, any of their respective Subsidiaries or any of their respective Affiliates.

6. Nondisparagement. No Seller Party shall, directly or indirectly, disparage the Purchaser, any Group Company or their respective Subsidiaries or Affiliates or the Business in any way that would adversely affect the goodwill, reputation or business relationships of the Purchaser, any Group Company or their respective Subsidiaries or Affiliates or the Business with the public generally, or with any employees, consultants or Business Relations, provided that such Seller Party shall not be prevented from providing true testimony to the extent required within any legal proceeding or investigation by a competent governmental authority.

7. Severability. If any term or provision of this Agreement shall be held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms and provisions of this Agreement shall remain in full force and effect, shall not in any way be affected, impaired or invalidated, and shall be enforced to the fullest extent permitted by law. To the extent that any provision of this Agreement shall be held by a court of competent jurisdiction to be unenforceable as written, the parties stipulate and agree that such provision shall be retroactively amended to conform to the maximum restrictions allowed by law, the same as if such provision as amended had originally been included in this Agreement.

8. Injunctive Relief; Disclaimer of Damages. Each Seller Party agrees that irreparable damage could occur and that Purchaser and Parent may not have any adequate remedy at law in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. It is accordingly agreed that Purchaser and Parent shall be entitled to injunction or injunctions and other equitable relief, including specific performance, to prevent breaches by any Seller Party of this Agreement and to enforce specifically the terms and provisions of this Agreement, in addition to any other remedy to which they are entitled at law or in equity, including damages.

9. Miscellaneous.

(a) Governing Law; Jurisdiction. This Agreement will be governed by, and construed in accordance with, the law of the State of Delaware without regard to the conflict of laws rules of such state. Each of the parties hereby irrevocably consents and agrees that it shall bring any action, suit or proceeding with respect to any matter arising under or relating to this Agreement or the subject matter hereof or thereof in the United States District Court for the Middle District of Florida (or if jurisdiction is not available in such court, then in a state court of the State of Florida), unless such party, based on the good faith advice of its counsel, determines that any such court may not exercise or have jurisdiction over the other party or such matter or that a judgment rendered by such court may not be enforceable in the jurisdiction of the organization of the other party or a jurisdiction in which such other party's office(s) or assets are located. Each of the parties hereby irrevocably accepts and submits, for itself and in respect of its properties, to the jurisdiction of the United States District Court for the Middle District of Florida (or if jurisdiction is not available in such court, then in a state court of the State of Florida), in personam, generally and unconditionally, with respect to any such action, suit or proceeding.

4

Each of the parties hereby irrevocably consents to the service of process in any such action, suit or proceeding in any such court by the mailing of a copy thereof by registered or certified mail, postage prepaid, to such party at the address specified on the signature page hereto. In addition to or in lieu of any such service, service of process may also be made in any other manner permitted by applicable law. Each of the parties hereby irrevocably and unconditionally waives any objection or defense which it may now or hereafter have to the laying of venue to any such action, suit or proceeding in the United States District Court for the Middle District of Florida (or if jurisdiction is not available in such court, then in a state court of the State of Florida) and hereby irrevocably and unconditionally waives and agrees not to plead or claim that any such action, suit or proceeding brought in such court has been brought in an inconvenient forum.

(b) Notices. All notices and other communications under this Agreement must be given in accordance with the notice provisions of the Asset Purchase Agreement. Notice to a Seller Party shall be sent to the address of such Seller Party set forth on the signature page hereto or to such other address, facsimile number or email address as such Seller Party may, from time to time, specify in writing to the Purchaser.

(c) Entire Agreement. This Agreement and the documents and instruments referred to herein, including the Asset Purchase Agreement, constitutes the entire agreement and understanding of the parties with respect to the subject matter hereof as a complete and final integration thereof, and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof.

(d) Amendments and Waivers. No amendment, modification or waiver in respect of this Agreement shall be effective against any party unless in writing and signed by such party. The failure of any party to this Agreement to assert any of its rights under this Agreement shall not constitute a waiver of such rights, and no waiver shall be deemed to be a further or continuing waiver of any such rights or any other terms or conditions of this Agreement.

(e) Successors and Assigns; Assignment. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. No party may assign its rights or obligations under this Agreement without the prior written consent of the other parties hereto; *provided, however*, that the Purchaser and Parent may assign all of their respective rights hereunder to an Affiliate. In addition, the Purchaser and Parent may collaterally assign or pledge their respective rights under this Agreement to any lender to Purchaser, Parent or any of their respective Affiliates.

(f) Rules of Construction. Section headings contained in this Agreement are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Agreement or the intent of any of the provisions of this Agreement. This Agreement has been negotiated on behalf of the parties with the advice of legal counsel and no general rule of contract construction requiring an agreement to be more stringently construed against the drafter or proponent of any particular provision may be applied in the construction or interpretation of this Agreement. As used herein, the singular shall include the plural and any reference to gender shall include all other genders. The terms "include," "including" and similar phrases shall mean including without limitation, whether by enumeration or otherwise.

(g) Counterparts. This Agreement may be executed in two or more counterparts, all of which, when taken together, will be deemed to constitute one and the same agreement. The parties agree that a facsimile signature shall constitute an original signature for all purposes.

(h)     Costs of Litigation.  If either party commences any proceeding, action or litigation against the other party concerning the terms of this Agreement or for the breach or threatened breach of this Agreement, in addition to any other relief granted, the prevailing party shall be entitled to recover all reasonable costs and expenses incurred by the prevailing party in connection with responding to and prosecuting or defending such action and the enforcement and collection of any judgment rendered therein, including, without limitation, all reasonable out-of pocket expenses, court costs, administrative fees, attorneys' fees, consultant fees, expert witness fees, personnel expenses, duplicating expenses and other related expenses that are associated with the prevailing party's enforcement of its legal rights under this Agreement (including all such costs, fees and expenses incurred in all appeals) and a right to such costs and expenses shall be deemed to have accrued upon the commencement of such action and shall be enforceable whether or not such action is prosecuted to judgment.

10.     Violation During Restricted Period.  If any Seller Party violates any covenant in Section 4 or Section 5, the period of restriction applicable to such covenant shall automatically be extended for a period equal to the period during which such Seller Party was, as determined by a final, nonappealable judicial order, in violation of such covenant.

[Signatures on Following Page]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

| PURCHASER: | SELLER PARTIES: |
|---|---|
| U.S. H&AC, LLC | COMPANY: |
| | U.S. HEATING & AIR CONDITIONING, INC. |
| By: /s/ *signature* | |
| Name: Mike Stucky | |
| Its: Chief Executive Officer | By: _____ |
| | Name: _____ |
| | Its: _____ |
| PARENT: | |
| SOUTHERN HVAC CORPORATION | SHAREHOLDER: |
| By: /s/ *signature* | _____ |
| Name: Mike Stucky | Arie Konforte |
| Its: Chief Executive Officer | |

Seller Parties Notice Address:

Arie Konforte

_____

Fax: [_____]
Email: [_____]

*[Signature page to Noncompetition Agreement]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

| PURCHASER: | SELLER PARTIES: |
|---|---|
| U.S. H&AC, LLC | COMPANY: |
| | U.S. HEATING & AIR CONDITIONING, INC. |

By: _____
Name: Mike Stucky
Its: Chief Executive Officer

By: _____
Name: ARIE K*NFORT*
Its: PR*S*D*NT

PARENT:

SOUTHERN HVAC CORPORATION

SHAREHOLDER:

By: _____
Name: Mike Stucky
Its: Chief Executive Officer

_____
Arie Konforte

Seller Parties Notice Address:

Arie Konforte
23A N**dl*s TR
L*ngw**d FL 32779
Fax: [ N/A ]
Email: [_____]
ARIE@callusHAC.com

*[Signature page to Noncompetition Agreement]*