# **EXHIBIT B**

**Execution Version**

# CONSULTING AGREEMENT

This Consulting Agreement (the Agreement) is made between U.S. H&AC, LLC (the "Company") and Arie Konforte ("Consultant"), collectively the "Parties," and will be effective as of February 1, 2017 ("Effective Date"). The Parties hereby confirm that the terms of this Agreement apply beginning upon the Effective Date, and cover, without limitation, all Work Product that Consultant conceives, develops, or reduces to practice during any Project Assignment (defined below).

**WHEREAS**, Purchaser and Consultant are party to that certain Asset Purchase Agreement, dated February 1, 2017 (the "Purchase Agreement"; capitalized terms used but not used herein shall have the respective meanings assigned to such terms in the Purchase Agreement), pursuant to which the Company shall acquire all of the assets of U.S. Heating & Air Conditioning, Inc. (the "Target") from Consultant and the other Sellers (the transactions contemplated by the Purchase Agreement, collectively, the "Transaction");

**WHEREAS**, Consultant, as a Seller under the Purchase Agreement, will receive substantial consideration from the Transaction;

**WHEREAS**, as a founder and officer of the Target, Consultant has a unique knowledge of the Target's business, its customers, and its trade secrets, and, as such, Consultant's execution of this Agreement is a condition to the Company's obligations under the Purchase Agreement and the closing of the Transaction;

**WHEREAS**, effective upon the closing of the Transaction, the Company wishes to engage Consultant to provide certain consulting services related to the Company's business and Consultant wishes to be so engaged; and

**WHEREAS**, the Company and Consultant mutually desire to enter into an agreement containing the terms and conditions governing their relationship following the consummation of the Transaction.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Company and Consultant hereby agree as follows:

1. <u>Engagement of Services</u>. The Company may issue project assignments to Consultant in the form attached to this Agreement as <u>Exhibit A</u> (each a "Project Assignment"). A Project Assignment will become binding when both parties have signed it and once signed, Consultant will be obligated to provide the services and to deliver the materials and deliverables as specified in each Project Assignment. The terms of this Agreement will govern all Project Assignments and services undertaken by Consultant for the Company. Consultant represents, warrants, and covenants that Consultant will perform the services under this Agreement in a timely, professional, and workmanlike manner and that all materials and deliverables provided to the Company will comply with (i) the requirements set forth in the Project Assignment, (ii) the

1

documentation and specifications for those materials and deliverables, (iii) any samples or documents provided by Consultant to the Company.

2.  Compensation; Timing. The Company will pay Consultant a fixed fee of $15,000 per complete month worked (and on a pro-rated basis for less than a complete month) for all work performed by Consultant under this Agreement. If either party for any reason terminates this Consulting Agreement or the Project Assignment executed contemporaneously herewith, Consultant will be entitled to a pro-rated portion of the monthly fee based on time spent on such Project Assignment during the month of termination. If provided for in the Project Assignment, the Company will reimburse Consultant's documented, out-of-pocket expenses no later than thirty (30) days after the Company's receipt of Consultant's invoice, except that reimbursement for expenses may be delayed until that time when Consultant furnishes adequate supporting documentation for the authorized expenses as the Company may reasonably request. Upon termination of this Agreement for any reason, Consultant will be (a) paid fees on the basis set forth in this Section 2 and (b) reimbursed only for expenses that are properly incurred prior to termination of this Agreement and which are either expressly identified in a Project Assignment or approved in advance in writing by the Company.

3.  Independent Contractor Relationship. Consultant's relationship with the Company is that of an independent contractor, and nothing in this Agreement is intended to, or shall be construed to, create a partnership, agency, joint venture, employment, or similar relationship. Consultant will not be entitled to any of the benefits that the Company may make available to its employees, including, but not limited to, group health or life insurance, profit-sharing or retirement benefits. Consultant is not authorized to make any representation, contract or commitment on behalf of the Company unless specifically requested or authorized in writing to do so by the Company. Consultant is solely responsible for, and will file, on a timely basis, all tax returns and payments required to be filed with, or made to, any federal, state or local tax authority with respect to the performance of services and receipt of fees under this Agreement. Consultant is solely responsible for, and must maintain adequate records of, expenses incurred in the course of performing services under this Agreement. No part of Consultant's compensation will be subject to withholding by the Company for the payment of any social security, federal, state or any other employee payroll taxes; it shall be Consultant's responsibility to pay any such taxes. The Company will regularly report amounts paid to Consultant by filing Form 1099-MISC with the Internal Revenue Service.

4.  Disclosure and Assignment of Work.

    a.  Definitions of "Innovations" and "Company Innovations". In this Agreement, "Innovations" means all discoveries, designs, developments, improvements, inventions (whether or not protectable under patent laws), works of authorship, information fixed in any tangible medium of expression (whether or not protectable under copyright laws), trade secrets, know-how, ideas (whether or not protectable under trade secret laws), mask works, trademarks, service marks, trade names and trade dress. "Company Innovations" means Innovations that Consultant, solely or jointly with others, creates, derives, conceives, develops, makes or reduces to practice under a Project Assignment.

b.  <u>Disclosure and Assignment of Company Innovations</u>.  Consultant agrees to maintain adequate and current records of all Company Innovations, which records shall be and remain the property of the Company. Consultant agrees to promptly disclose and describe to the Company all Company Innovations. Consultant hereby does and will irrevocably assign to the Company or the Company's designee all of Consultant's right, title and interest in and to any and all Company Innovations and all associated records. To the extent any of the rights, title and interest in and to Company Innovations cannot be assigned by Consultant to the Company, Consultant hereby grants to the Company an exclusive, royalty-free, transferable, irrevocable, worldwide, fully paid-up license (with rights to sublicense through multiple tiers of sublicensees) to fully use, practice and exploit those non-assignable rights, title and interest, including, but not limited to, the right to make, use, sell, offer for sale, import, have made, and have sold, the Company Innovations. To the extent any of the rights, title and interest in and to the Company Innovations can neither be assigned nor licensed by Consultant to the Company, Consultant hereby irrevocably waives and agrees never to assert the non-assignable and non-licensable rights, title and interest against the Company, any of the Company's successors in interest, or any of the Company's customers.

c.  <u>Works for Hire</u>.  Consultant acknowledges that all original works of authorship that are made by Consultant (solely or jointly with others) during the term of this Agreement and that relate to the Company and which are protectable by copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101), to the maximum extent permissible thereunder.

d.  <u>Assistance</u>.  Consultant agrees to perform, during and after the term of this Agreement, all acts that the Company deems necessary or desirable to permit and assist the Company, at its expense, in obtaining, perfecting and enforcing the full benefits, enjoyment, rights and title throughout the world in the Company Innovations as provided to the Company under this Agreement. If the Company is unable for any reason to secure Consultant's signature to any document required to file, prosecute, register or memorialize the assignment of any rights under any Company Innovations as provided under this Agreement, Consultant hereby irrevocably designates and appoints the Company and the Company's duly authorized officers and agents as Consultant's agents and attorneys-in-fact to act for and on Consultant's behalf and instead of Consultant to take all lawfully permitted acts to further the filing, prosecution, registration, memorialization of assignment, issuance and enforcement of rights in, to and under the Company Innovations, all with the same legal force and effect as if executed by Consultant. The foregoing is deemed a power coupled with an interest and is irrevocable.

e.  <u>Out-of-Scope Innovations</u>.  If Consultant incorporates or permits to be incorporated any Innovations relating in any way, at the time of conception, reduction to practice, creation, derivation, development or making of the Innovation, to the Company's business or actual or demonstrably anticipated research or development but which were conceived, reduced to practice, created, derived, developed or made by Consultant (solely or jointly) unrelated to Consultant's work for the Company under this Agreement (collectively, the "Out-of-Scope Innovations") into any of the Company Innovations, then Consultant hereby grants to the Company and the Company's designees a royalty-free, transferable, irrevocable, worldwide, fully paid-up license (with rights to sublicense through multiple tiers of sublicensees) to fully use, practice and exploit all patent, copyright, moral right, mask work, trade secret and

3

other intellectual property rights relating to the Out-of-Scope Innovations. Notwithstanding the foregoing, Consultant agrees that Consultant shall not incorporate, or permit to be incorporated, and that he has not incorporated or permitted to be incorporated, any Innovations conceived, reduced to practice, created, derived, developed or made by others or any Out-of-Scope Innovations into any Company Innovations without the Company's prior written consent.

5. Confidentiality.

   a. Definition of Confidential Information. "Confidential Information" means (a) any technical and non-technical information related to the Company's business and current, future and proposed products and services of the Company, including for example and without limitation, Company Innovations, Company Property (as defined below), and the Company's information concerning research, development, design details and specifications, financial information, procurement requirements, engineering and manufacturing information, lists and information concerning customers, vendors, and suppliers, business forecasts, sales information, marketing plans and business plans, in each case whether or not marked as "confidential" or "proprietary" and (b) any information that the Company has received from others that may be known or made known to Consultant and that the Company is obligated to treat as confidential or proprietary, whether or not marked as "confidential" or "proprietary".

   b. Nondisclosure and Nonuse Obligations. Except as permitted in this Section, Consultant will not (i) use any Confidential Information or (ii) disseminate or in any way disclose the Confidential Information to any person, firm, business or governmental agency or department. Consultant may use the Confidential Information solely to perform Project Assignment(s) for the benefit of the Company. Consultant shall treat all Confidential Information with the same degree of care as Consultant accords to Consultant's own confidential information, but in no case shall Consultant use less than reasonable care. Consultant must immediately give notice to the Company of any unauthorized use or disclosure of the Confidential Information. Consultant must assist the Company in remedying any unauthorized use or disclosure of the Confidential Information. Consultant agrees not to communicate any information to the Company in violation of the proprietary rights of any third party.

   c. Exclusions from Nondisclosure and Nonuse Obligations. Consultant's obligations under this Section 5 do not apply to any Confidential Information that Consultant can demonstrate (i) was in the public domain at or subsequent to the time the Confidential Information was communicated to Consultant through no fault of Consultant; (ii) was rightfully in Consultant's possession free of any obligation of confidence at or subsequent to the time the Confidential Information was communicated to Consultant; or (iii) was independently developed by Consultant without use of, or reference to, any Confidential Information communicated to Consultant. A disclosure of any Confidential Information by Consultant (i) in response to a valid order by a court or other governmental body or (ii) as otherwise required by law will not be considered to be a breach of this Agreement or a waiver of confidentiality for other purposes; provided, however, that Consultant provides prompt prior written notice thereof to the Company to enable the Company to seek a protective order or otherwise prevent the disclosure. Additionally, the nondisclosure obligations in this Section do not apply to information that is provided (i) in confidence to a federal, state, or local government official, either directly or

4

indirectly, or to an attorney and (ii) solely for the purpose of reporting or investigating a suspected violation of law.

    d.  Defend Trade Secrets Act of 2016. Pursuant to the Defend Trade Secrets Act of 2016, Consultant acknowledges that he shall not have criminal or civil liability under any federal or state trade secret law for the disclosure of a trade secret that (A) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In addition, if Consultant files a lawsuit for retaliation by the Company for reporting a suspected violation of law, Consultant may disclose the trade secret to his attorney and may use the trade secret information in the court proceeding, if he (X) files any document containing the trade secret under seal and (Y) does not disclose the trade secret, except pursuant to court order.

6.  Ownership and Return of Confidential Information and Company Property. All Confidential Information and any materials and items (including, without limitation, software, equipment, tools, artwork, documents, drawings, papers, diskettes, tapes, models, apparatus, sketches, designs and lists) that the Company furnishes or has furnished to Consultant, whether delivered to Consultant by the Company or made by Consultant in the performance of services under this Agreement and whether or not they contain or disclose Confidential Information (collectively, the "Company Property"), are the sole and exclusive property of the Company or the Company's suppliers or customers. Consultant agrees to keep all Company Property at Consultant's premises unless otherwise permitted in writing by the Company. Within five (5) days after any request by the Company, Consultant shall, at the Company's option, either destroy or deliver to the Company (a) all Company Property and (b) all materials and items in Consultant's possession or control that contain or disclose any Confidential Information. Consultant will provide the Company a written certification of Consultant's compliance with Consultant's obligations under this Section.

7.  Noncompetition with the Company. During the term of this Agreement, and for a period of one (1) year following the termination or expiration of this Agreement, Consultant will not, (a) directly or by assisting others, engage in a Competing Business, (b) serve as executive, officer, director, manager, or consultant to any person or entity that engages in a Competing Business, or (c) directly or indirectly hold any equity or ownership interest in any entity, except for an ownership interest of less than one percent (1%) of the outstanding equity of any publicly-traded entity, that engages in a Competing Business. For purposes of this provision, "Competing Business" shall mean the business of providing heating and air conditioning installation, maintenance, repair and replacement services, including new installation services for homebuilders and retrofit and maintenance services, as well as electrical and plumbing services, in each case, for homeowners, property management & home warranty companies, multi-family housing and other residential businesses, as currently conducted by the Company.

8.  Nonsolicitation of Customers, Vendors, and Suppliers. During the term of this Agreement, and for a period of one (1) year following the termination or expiration of this Agreement, Consultant will not, directly or indirectly by assisting others, solicit, persuade, or otherwise encourage any customer, vendor, or supplier of or to the Company with whom Consultant had contact to stop or otherwise reduce or limit the business it does with the

5

Company for the purpose of offering or providing any services competitive with or directly substitutable for those provided by the Company.

9. Nonsolicitation of Employees. During the term of this Agreement, and for a period of one (1) year following the termination or expiration of this Agreement, Consultant will not, directly or indirectly, solicit, recruit, or induce any employee, consultant, or other independent contractor of the Company to terminate or breach an employment, contractual, or other relationship with the Company; *provided*, that the foregoing shall not prohibit (i) a general solicitation to the public not specifically directed at any such employee, consultant, or other independent contractor or (ii) soliciting, recruiting, or hiring any Company employee who ceased to be employed or retained by the Company at least six (6) months prior to the solicitation, recruiting, or hiring.

10. Indemnification. Consultant will indemnify and hold harmless the Company from and against any and all third party claims, suits, actions, demands and proceedings against the Company and all losses, costs and liabilities related thereto arising out of or related to (a) an allegation that any item, material and other deliverable delivered by Consultant under this Agreement infringes any intellectual property rights or publicity rights of a third party or (b) any negligence by Consultant or any other act or omission of Consultant, including without limitation any breach of this Agreement.

11. Observance of Company Rules. At all times while on the Company's premises, Consultant will observe the Company's rules and regulations with respect to conduct, health, safety, and protection of persons and property.

12. No Conflict of Interest. During the term of this Agreement, Consultant will not accept work, enter into a contract or accept an obligation inconsistent or incompatible with Consultant's obligations, or the scope of services to be rendered for the Company, under this Agreement. Consultant warrants that, to the best of Consultant's knowledge, there is no other existing contract or duty on Consultant's part that conflicts with or is inconsistent with this Agreement. Consultant agrees to indemnify and hold harmless the Company from any and all losses and liabilities incurred or suffered by the Company by reason of the alleged breach by Consultant of any services agreement between Consultant and any third party.

13. Term and Termination.

    a. Term. This Agreement is effective as of the Effective Date set forth above and will terminate on the one (1) year anniversary of the Effective Date unless terminated earlier as set forth below or extended by mutual agreement of the Parties (the period from the Effective Date through the expiration or termination of this Agreement, including any extension by mutual agreement, being the "Consulting Period").

    b. Termination by the Company. The Company may terminate this Agreement or any Project Assignment without cause at any time, with termination effective thirty (30) days after the Company's delivery to Consultant of written notice of termination. The Company also may terminate this Agreement or any Project Assignment immediately upon (i) Consultant's breach of Section 4 (Disclosure and Assignment of Work Resulting from Project Assignments),

6

Section 5 (Confidentiality), Section 6 (Ownership and Return of Confidential Information and Company Property), Section 7 (Noncompetition with the Company), Section 8 (Nonsolicitation of Customers, Vendors, and Suppliers) or Section 9 (Nonsolicitation of Employees) of this Agreement; (ii) Consultant's breach of any other provision of this Agreement or obligation under a Project Assignment where Consultant's breach is not cured within ten (10) days after the date of the Company's written notice of breach; or (iii) Consultant's breach of any other agreement to which Consultant and the Company are parties, including the Purchase Agreement.

    c.    <u>Termination by Consultant</u>. Consultant may terminate this Agreement or any Project Assignment without cause at any time, with termination effective thirty (30) days after Consultant's delivery to the Company of written notice of termination. Consultant also may terminate this Agreement immediately for a material breach by the Company of any provision of this Agreement if the Company's material breach is not cured within ten (10) days after the date of Consultant's written notice of breach.

    d.    <u>Effect of Expiration or Termination</u>. Upon expiration or termination of this Agreement, the Company shall pay Consultant for services properly performed under this Agreement as set forth in each then pending Project Assignment. The definitions contained in this Agreement and the rights and obligations contained in this Section and Section 4 (Disclosure and Assignment of Work Resulting from Project Assignments), Section 5 (Confidentiality), Section 6 (Ownership and Return of Confidential Information and Company Property), Section 7 (Noncompetition with the Company), Section 8 (Nonsolicitation of Customers, Vendors, and Suppliers), Section 9 (Nonsolicitation of Employees), Section 10 (Indemnification), and Section 12 (General Provisions), and any surviving obligations contained in any other agreement to which Consultant and the Company are parties, including the Purchase Agreement, will survive any termination or expiration of this Agreement.

14.    <u>General Provisions</u>.

    a.    <u>Successors and Assigns</u>. Consultant shall not assign his rights or delegate any performance under this Agreement without the prior written consent of the Company. For the avoidance of doubt, Consultant may not subcontract performance of any services under this Agreement to any other contractor or consultant without the Company's prior written consent. All assignments of rights by Consultant are prohibited under this paragraph, whether they are voluntary or involuntary, by merger, consolidation, dissolution, operation of law, or any other manner. Any purported assignment of rights or delegation of performance in violation of this paragraph is void. This Agreement will be for the benefit of the Company's successors and assigns, and will be binding on Consultant's permitted assignees.

    b.    <u>Injunctive Relief</u>. Consultant's obligations under this Agreement are of a unique character that gives them particular value; Consultant's breach of any of these obligations will cause irreparable and continuing damage to the Company for which money damages are insufficient, and the Company is entitled to injunctive relief, a decree for specific performance, and all other relief as may be proper (including money damages if appropriate), without the need to post a bond.

    c.    <u>Notices</u>. Any notice required or permitted by this Agreement shall be in writing and shall be delivered as follows, with notice deemed given as indicated: (i) by personal delivery, when actually delivered; (ii) by overnight courier, upon written verification of receipt; (iii) by facsimile transmission, upon acknowledgment of receipt of electronic transmission; or (iv) by certified or registered mail, return receipt requested, upon verification of receipt. Notice shall be sent to the addresses set forth above or to such other address as either party may provide in writing.

    d.    <u>Governing Law; Forum</u>. The laws of the State of Florida shall govern all matters arising out of or relating to this Agreement without giving effect to any conflict of law principles. Each of the parties irrevocably consents to the exclusive personal jurisdiction of the federal and state courts located in the State of Florida, as applicable, for any matter arising out of or relating to this Agreement.

    e.    <u>Modification; Severability</u>. If a court of law holds any provision of this Agreement to be illegal, invalid or unenforceable, (i) that provision may be amended by that court, including being struck entirely if necessary, to achieve an effect that is as near as possible to that provided by the original provision and (ii) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected.

    f.    <u>Waiver; Amendment</u>. If the Company waives any term, provision or Consultant's breach of this Agreement, such waiver shall not be effective unless it is in writing and signed by the Company. No waiver by a Party of a breach of this Agreement shall constitute a waiver of any other or subsequent breach. This Agreement may be amended or modified only by mutual written agreement of the Parties or a court of competent jurisdiction.

    g.    <u>Entire Agreement</u>. This Agreement constitutes the final and exclusive agreement between the Parties relating to this subject matter and supersedes all agreements, whether prior or contemporaneous, written or oral, concerning such subject matter, except that nothing in the Agreement shall supersede the terms of the Purchase Agreement, or any other agreement to which the Company and Consultant are parties required thereby or contemplated therein.

*[signatures on following page(s)]*

      **IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first written above.

COMPANY:

U.S. H&AC, LLC

By: _____

Name: <u>Michael Stucky</u>

Title: <u>Chief Executive Officer</u>


CONSULTANT:

_____

Arie Konforte

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first written above.

COMPANY:

U.S. H&AC, LLC

By: _____

Name: <u>Michael Stucky</u>

Title: <u>Chief Executive Officer</u>


CONSULTANT:

_____
Arie Konforte

*[Signature page to Consulting Agreement]*

## Consulting Agreement – Exhibit A

### PROJECT ASSIGNMENT

<u>Dates of Service</u>. Consulting will provide the services specified below during the Consulting Period (as defined in the Consulting Agreement that governs this Project Assignment).

<u>Services and Deliverables to be Provided</u>: Consultant will assist the Company in transitioning the business of Target to the Company, facilitating and protecting the commercial working relationships between the Company and former employees of the Target that are now employed by the Company and current customers, vendors, and suppliers of the Company (and former customers, vendors, and suppliers of the Target), participating in bids and negotiating contracts, new business development efforts, and other such duties as the Company may assign from time to time. During the Consulting Period, Consultant is expected to devote 10 to 25 hours per week to providing services to the Company.

<u>Expenses</u>. The Company will reimburse Consultant for pre-approved eligible expenses incurred by Consultant in connection with this Project Assignment for required travel, lodging, meals, etc. upon receipt of proper documentation of those expenses from Consultant. Consultant must submit any such requests for reimbursement along with the monthly invoices.

<u>Modifications</u>. A new Project Assignment may be entered into at any time on the agreement of the Parties.

IN WITNESS WHEREOF, the Parties have executed this Project Assignment as of the dates set forth below.

COMPANY:

U.S. H&AC, LLC

By: _____

Name: Michael Stuly

Title: CEO


CONSULTANT:

_____

Arie Konforte

## Consulting Agreement – Exhibit A

### PROJECT ASSIGNMENT

Dates of Service. Consulting will provide the services specified below during the Consulting Period (as defined in the Consulting Agreement that governs this Project Assignment).

Services and Deliverables to be Provided: Consultant will assist the Company in transitioning the business of Target to the Company, facilitating and protecting the commercial working relationships between the Company and former employees of the Target that are now employed by the Company and current customers, vendors, and suppliers of the Company (and former customers, vendors, and suppliers of the Target), participating in bids and negotiating contracts, new business development efforts, and other such duties as the Company may assign from time to time. During the Consulting Period, Consultant is expected to devote 10 to 25 hours per week to providing services to the Company.

Expenses. The Company will reimburse Consultant for pre-approved eligible expenses incurred by Consultant in connection with this Project Assignment for required travel, lodging, meals, etc. upon receipt of proper documentation of those expenses from Consultant. Consultant must submit any such requests for reimbursement along with the monthly invoices.

Modifications. A new Project Assignment may be entered into at any time on the agreement of the Parties.

IN WITNESS WHEREOF, the Parties have executed this Project Assignment as of the dates set forth below.

COMPANY:

U.S. H&AC, LLC

By: _____

Name: _____

Title: _____


CONSULTANT:

_____
Arie Konforte